FILED

US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Aug 11, 2017

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KEURIG GREEN MOUNTAIN, INC.**                                           **PLAINTIFF**

**V.**                                  CIVIL ACTION NO. ___17-5161 TLB___

**CHRISTOPHER LANNING**                                              **DEFENDANT**

## COMPLAINT

Comes Keurig Green Mountain, Inc., by and through its counsel, Hopkins Headlee Caststeel PLLC, and for its Complaint, states as follows:

### Parties

1.      Keurig Green Mountain, Inc. ("**Plaintiff**" or "**Keurig**") is a Delaware corporation with its principal place of business in Vermont and is authorized to do business in Arkansas. Keurig is the successor to Keurig, Incorporated.

2.      Upon information and belief, Christopher Lanning ("**Defendant**" or "**Lanning**") is an individual citizen of, resides in, and is domiciled in Springdale, Benton County, Arkansas.

### Jurisdiction and Venue

3.      This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1337. More specifically, this action arises under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836(b), and this Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. Additionally, jurisdiction is established under 28 U.S.C. § 1332 because Plaintiff is a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of

-1-

Vermont; Defendant is a citizen of, resides in, and is domiciled in the State of Arkansas; and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

4.      Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) because Defendant is a citizen of, resides in, and is domiciled in the Western District of Arkansas and further under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Arkansas.

**Background**

5.      Keurig manufactures and sells hot beverage brewing appliances, primarily used for coffee, hot cocoa, and tea.  Keurig also sells coffee, hot cocoa, teas, and other beverages for its hot beverage brewing appliances, and in particular single serve pods of such beverages. Keurig sells its products throughout the United States and worldwide to consumers and retailers. Plaintiff's single largest revenue generating retail customer is Walmart Stores, Inc. and its affiliated companies (collectively, "**Walmart**").

6.      On or about August 14, 2012, Defendant commenced employment with Keurig. During his almost five years of employment with Keurig, Defendant was a Category Manager and was a part of a dedicated team of ten to twelve Keurig employees located in Rogers, Arkansas who worked exclusively on the Walmart account.  Defendant had regular contact with specific Walmart buyers in connection with his duties selling Plaintiff's hot beverage brewing appliances and single serve pods to Walmart.

7.      Upon information and belief, Defendant had no prior experience in the coffee industry before joining Keurig.  Rather, Keurig provided Defendant access to its confidential

-2-

information and trade secrets in order to develop the comprehensive knowledge of Keurig and the hot beverage appliance industry he needed in order to perform his job responsibilities.

8.       Upon commencing employment with and in exchange for his offer of at-will employment, Defendant executed a Confidentiality Agreement (the "**Confidentiality Agreement**"), which is governed by the laws of the Commonwealth of Massachusetts.   A true and correct copy of the Confidentiality Agreement is attached hereto and incorporated herein by reference as **Exhibit A**.  The Confidentiality Agreement expressly states that Defendant's offer of employment, the compensation to be paid to him as an employee, and Keurig's willingness to allow Defendant access to Keurig's confidential information in order to perform his job responsibilities, as well as other good and valuable consideration, supported the creation and enforceability of the Confidentiality Agreement.  [Confidentiality Agreement, Intro. Paragraph]

9.       Under the Confidentiality Agreement, Defendant is obligated, among other things, to not:

     a.       Participate in the development and provision of goods and services which are similar to or competitive with goods or services provided or proposed to be provided by Plaintiff for a period of one year after termination of Defendant's employment with Plaintiff [Confidentiality Agreement, ¶ 1];

     b.       Engage in the solicitation of any customer or prospective customer (with respect to products or services competitive with Plaintiff's products or services that Plaintiff has during the year preceding termination of Defendant provided products or services) for a period of one year after termination of Defendant's employment with Plaintiff [Confidentiality Agreement, ¶ 1];

c.      Solicit or hire any Keurig employee (or individual who was employed by Keurig during the last six months of Defendant's employment with Keurig) for a period of one year after termination of Defendant's employment with Plaintiff [Confidentiality Agreement,¶ 1]; and

d.      Use or disclose any Confidential Information (as defined in the Confidentiality Agreement) other than pursuant to Defendant's employment by and for the benefit of Plaintiff [Confidentiality Agreement, ¶ 2].

10.     The term "Confidential Information" is defined in Paragraph 2 of the Confidentiality Agreement as follows:

> "all trade secrets, proprietary information and other data or information (and any tangible evidence, record or representation thereof), whether prepared, conceived or developed by an employee of the [Plaintiff] (including [Defendant]) or received by [Plaintiff] by an outside source, which is in possession of [Plaintiff] (whether or not the property of [Plaintiff]), which in any way relates to the present or future business of [Plaintiff], which is maintained in confidence by [Plaintiff], or which might permit [Plaintiff] or its customers to obtain a competitive advantage over competitors who do not have access to such trade secrets, proprietary information, or other data or information."

[Confidentiality Agreement, ¶ 2]

11.     The Confidentiality Agreement further states that Confidential Information includes, *inter alia*, the following:

a.      Any idea, improvement, invention, innovation, development, technical data, design, formula, device, pattern, concept, method, process, computer program, software, firmware, source code, object code, algorithm, subroutine, object module, schematic, model, diagram, flow chart, chip masking specification, user manual, training or service manual, product specification, plan for a new or revised product, compilation of information, or work in process, and any and all revisions and improvements relating to any of the foregoing (in each case whether or not reduced to tangible form); and

-4-

     b.     The name of any customer, vendor, consultant, employee, prospective customer or consultant, any sales plan, marketing material, plan or survey, business plan or opportunity, or product or development plan or specification, business proposal, financial record, or business record or other record or information relating to the present or proposed business of [Plaintiff].

[Confidentiality Agreement, ¶ 2]

12.     In the Confidentiality Agreement, Defendant agreed that Keurig "shall be entitled to injunctive relief for the enforcement hereof." [Confidentiality Agreement, page 4].

13.     In the Confidentiality Agreement, Defendant also expressly agreed that the Agreement "shall inure to the benefit of and be binding on the successors and assigns of the Company."[1] [Confidentiality Agreement, page 4].

14.     Defendant had access to and acquired Confidential Information while employed with Plaintiff.  Specifically, Defendant was given full and complete access to Keurig's Confidential Information regarding Keurig's various products and promotional activities with Walmart, its new product development plans, and its pricing and financial terms and arrangements with Walmart.

15.     Examples of the Confidential Information to which Defendant had access and developed, on Keurig's behalf, include:

     a.     Keurig's confidential brewer innovation pipeline, including information about brewers that are not yet available to the public and will not be for over a year;

---

[1] Between 2006 and 2014, Keurig, Incorporated was a wholly owned subsidy of Green Mountain Coffee Roasters, Inc.  In March 2014, Green Mountain Coffee Roasters, Inc. changed its name to Keurig Green Mountain, Inc. and Keurig, Incorporated merged into Plaintiff. Plaintiff became successor to Keurig, Incorporated's rights under the Confidentiality Agreement, and Defendant became an employee of Plaintiff.

    b.  Negotiations between Keurig and Walmart concerning pricing of Keurig's appliances and beverages;

    c.  Confidential presentations to, and discussions with, Walmart concerning Keurig's plans with respect to brewers and beverages, including information that compared Keurig's single-serve beverage appliances with the types of drip-brew appliances sold by others (e.g., the types of appliances sold by KRUPS (as hereinafter defined));

    d.  Confidential business plans regarding Keurig's goal of growing the single-serve segment within the broader category of coffee.

   16.  Keurig is the owner of the Confidential Information, and Keurig has taken reasonable efforts to maintain the secrecy of its Confidential Information, which efforts include, but are not limited to, the following: (i) requiring employees to sign a confidentiality agreement; (ii) requiring certain employees (including Defendant) to sign agreements containing protective covenants including provisions prohibiting certain competitive and solicitation activities during and after employment; (iii) implementing a code of conduct that requires employee to maintain the confidentiality of information that the employee learns in the scope of his or her employment; (iv) marking presentations and documents distributed to retail customers, including Walmart, as confidential; (v) requiring employees to secure their employment-related electronic devices by passwords and other methods; and (vi) requiring that employees agree, in a confidentiality agreement, to return all Company property, including confidential information, documents and materials upon separation from employment with the Company.

   17.  Since Keurig sells its products throughout the United States and worldwide, the Confidential Information relates to Plaintiff's products and services used in, or intended for use in, interstate and foreign commerce. Additionally, given that the Confidential Information is

maintained in confidence by Plaintiff and its employees, the Confidential Information is not generally known to, and not readily ascertainable through proper means, by other persons who can obtain economic value for the disclosure or use of the Confidential Information. Further, the Confidential Information has independent economic value as it provides Plaintiff with an advantage over its competitors.

18.    As stated above, Defendant was one member of a team of Keurig employees who worked exclusively with the buyers at Walmart who purchase Keurig coffee and brewers and devote Walmart shelf-space to the marketing and sale of such products. Thus, Defendant, by design, was a primary point of contact for the Walmart buyers during the five years of his employment.

19.    In May 2017, Defendant submitted his resignation from Keurig to be effective June 2, 2017.

20.    Defendant advised Keurig that he intended to seek employment as an Account Manager for Groupe SEB USA, which sells the KRUPS brand (Groupe SEB USA and KRUPS will be referred to herein collectively as "**KRUPS**"). KRUPS manufactures small kitchen appliances, and in particular, hot beverage brewing appliances. Also, according to its website, KRUPS sells other appliances, such as toasters, toaster ovens, waffle makers, hand mixers, deep fryers, and blenders.

21.    In response to questions from Keurig, Defendant informed Keurig that his employment with KRUPS would be dedicated *exclusively* to handling KRUPS's sales relationship with Walmart – the very same Keurig customer with which Defendant worked exclusively for five years while employed with Keurig – with at least thirty to forty percent (30-

40%) of Defendant's sales portfolio to be comprised of hot beverage brewing appliances to be sold to Walmart.

22.     After learning of Defendant's potential employment with KRUPS, and before his last day at Keurig, Keurig reminded Defendant of the terms of his Confidentiality Agreement. Keurig specifically informed Defendant that, based on his description of his role at KRUPS, such employment would violate the terms of his Confidentiality Agreement.

23.     Keurig also sent a letter to Defendant asking that he confirm that he would not violate the terms of his Confidentiality Agreement by, among other things, commencing employment in the role he described to Keurig.  Defendant never responded to this letter.

24.     Undersigned counsel sent a follow up letter to Defendant, reiterating Keurig's concerns that Defendant's anticipated role at KRUPS (as described by Defendant) would violate the terms of his Confidentiality Agreement as he would be responsible for selling KRUPS's coffee appliances to the same customer he serviced while at Keurig.  Defendant never responded to undersigned counsel's letter.

25.     On or about June 2, 2017, Defendant's employment with Keurig ended.

26.     Upon information and belief, at some point after his employment with Keurig terminated, Defendant commenced employment as an Account Manager for KRUPS. Upon further information and belief, the same Walmart buyer that Defendant interacted with regarding sales of Keurig's hot beverage appliance is the same person that Defendant interacts with regarding sales of KRUPS hot beverage brewing appliances.

27.     Upon information and belief, Walmart is the most significant U.S. retail customer for KRUPS, as Walmart sells a number of KRUPS products and, most importantly, its hot beverage appliances.

28. Plaintiff and KRUPS sell similar and competitive hot beverage brewing appliances that serve the exact same target consumer market—coffee and other hot beverage consumers. Additionally, Plaintiff and KRUPS compete in selling their respective hot beverage brewing appliances to Walmart and other retail customers, and in doing so, they contend for promotion and shelf spacing and other consideration from such retail customers.

29. In fact, Walmart's website confirms that Keurig's products and KRUP's products are direct competitors. If a consumer goes to Walmart.com and searches in the "coffee makers" section of the "Kitchen Appliance" department, both Keurig's coffee makers and KRUP's coffee makers are listed in the search results presented to the consumer. Furthermore, Walmart physical stores typically also maintain a section in the "Kitchen Appliance" department of the store where Keurig's and KRUP's hot beverage appliances are both located (sometimes in the same aisle), competing for the same customers.

30. Given the similarities between Defendant's duties when employed by Keurig and his duties as an employee of KRUPS, it is inevitable that Defendant will use and/or disclose the Confidential Information in connection with his employment at KRUPS. Moreover, due to the competitive relationship between Plaintiff and KRUPS, Defendant's use and/or disclosure of the Confidentiality Information in connection with his employment with KRUPS would be detrimental and cause irreparable harm to Keurig.

**Count I**
**Breach of Contract/Specific Performance**

31. Plaintiff realleges and incorporates herein by reference all allegations set forth in all of the Paragraphs above.

32.     The Confidentiality Agreement is a valid and binding contract between Plaintiff and Defendant.

33.     Plaintiff has met any and all of its obligations under the Confidentiality Agreement imposed upon it.

34.     As a result of his employment with KRUPS, Defendant is in breach of his obligations under the Confidentiality Agreement.   In particular, Defendant is in breach of the Confidentiality Agreement because, within one year after termination of his employment with Plaintiff, he is  (i) participating in the development and/or provision of goods and/or services which are similar to or competitive with goods and/or services provided or proposed to be provided by Plaintiff; (ii) engaging in the solicitation of customers and/or prospective customers with respect to products and/or services competitive with Plaintiff's products and/or services that Plaintiff has provided during the year preceding termination of Defendant (including Walmart); and (iii) necessarily using and/or disclosing the confidential information and trade secrets of Keurig in performing his job duties for KRUPS.

35.     Plaintiff is entitled to and requests a declaratory judgment that Defendant's employment with KRUPS constitutes Defendant:  (i) participating in the development and/or provision of goods and/or services which are similar to or competitive with goods and/or services provided or proposed to be provided by Plaintiff; (ii) engaging in the solicitation of customers and/or prospective customers with respect to products and/or services competitive with Plaintiff's products and/or services that Plaintiff has provided during the year preceding termination of Defendant; and (iii) using and/or disclosing the confidential information and/or trade secrets of Keurig in performing his job duties for KRUPS.

-10-

36.     Plaintiff is entitled to and requests preliminary and permanent injunctive relief against Defendant for specific performance of the Confidentiality Agreement by Defendant. This injunctive relief should include, without limitation, an Order prohibiting Defendant from: (i) participating in the development and provision of goods and services which are similar to or competitive with goods or services provided or proposed to be provided by Plaintiff; (ii) engaging in the solicitation of any customer or prospective customer with respect to products or services competitive with Plaintiff's products or services that Plaintiff has during the year preceding termination of Defendant provided products or services; (iii) being employed by KRUPS to service, handle, or otherwise assist with KRUPS'S Walmart account with respect to KRUPS'S coffee and other hot beverage brewing appliances; and (iv) using and/or disclosing the confidential information and/or trade secrets of Keurig.  Further, such injunctive relief should include an Order that requires Defendant to return to Keurig any and all property, Confidential Information, and/or trade secrets in his possession, custody or control.  In order for Plaintiff to receive the benefit of its bargain under the Confidentiality Agreement, such injunctive relief relating to subparagraphs (i), (ii), and (iii) above should be for a period of one (1) full year after the injunctive relief is granted.

37.     As a point of clarification, Plaintiff is not seeking injunctive relief in this Complaint to prohibit Defendant from being employed in any capacity with KRUPS.  Rather, the Confidentiality Agreement would allow Defendant to work at KRUPS, provided that, during his first year of employment, he not solicit any Keurig customer (including Walmart) and that he not participate in the development or sale of products which are competitive with Keurig's products (and also assuming that he not otherwise use or disclose any Keurig confidential information or trade secrets).

-11-

38.     As a proximate cause of Defendant's breach of the Confidentiality Agreement, Plaintiff has suffered and will continue to suffer damages, which damages, exclusive of interest and costs, exceed $75,000.00.   In addition to the above described injunctive relief, Plaintiff is entitled to and requests judgment against Defendant for all such damages it has suffered as a result of Defendant's breach of the Confidentiality Agreement.

39.     Pursuant to applicable law, Plaintiff is entitled to and requests an award of attorney's fees and costs incurred in the prosecution of this action.

## Count II
### Breach of Implied Covenant of Good Faith and Fair Dealing

40.     Plaintiff realleges and incorporates herein by reference all allegations set forth in all of the Paragraphs above.

41.     All contracts under Massachusetts law include an implied covenant of good faith and fair dealing, which requires that neither party take any action that will deprive the other of the benefit of the contract between them.   Therefore, the Confidentiality Agreement contains an implied covenant of good faith and fair dealing.

42.     Defendant acted, and continues to act, in bad faith in connection with his breaches of the covenant of good faith and fair dealing.

43.     As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has and will continue to suffer damages, which damages, exclusive of interest and costs, exceed $75,000.00.

## Count III
### Defend Trade Secrets Act of 2016 - 18 U.S.C. § 1836(b)

44.     Plaintiff realleges and incorporates herein by reference all allegations set forth in all of the Paragraphs above.

45.     The Confidential Information as defined in the Confidentiality Agreement constitute "trade secrets" within the meaning of the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836(b) ("**Federal Trade Secrets Act**"). Plaintiff is entitled to and requests a declaratory judgment that the Confidential Information constitutes "trade secrets" within the meaning of the Federal Trade Secrets Act.

46.     Under the Federal Trade Secrets Act, Plaintiff is entitled to and requests preliminary and permanent injunctive relief against Defendant to prohibit Defendant's actual, threatened, and/or inevitable misappropriation of the Confidential Information. This injunctive relief should include, without limitation, an Order prohibiting Defendant from (i) using and disclosing any Confidential Information in any manner; and (ii) being employed by KRUPS to service, handle, or otherwise assist with KRUPS's Walmart account with respect to KRUPS's coffee and other hot beverage brewing appliances for one (1) year after the injunctive relief is granted. Further, this injunctive relief should include an Order requiring Defendant to return to Keurig any and all Confidential Information and all other trade secrets.

47.     Pursuant to the Federal Trade Secrets Act, to the extent that Defendant has misappropriated the Confidential Information, Plaintiff is entitled to and requests an award of damages in its favor against Defendant for damages for actual loss caused by the misappropriation of the Confidential Information, damages for all unjust enrichment caused by the misappropriation of the Confidential Information that is not addressed in computing damages for actual loss, and/or the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for Defendant's unauthorized disclosure or use of the Confidential Information, which amounts, exclusive of interests and costs, exceed $75,000.00.

48.     Pursuant to the Federal Trade Secrets Act and other applicable law, Plaintiff is entitled to and requests an award of attorney's fees and costs incurred in the prosecution of this action.

**Count IV**
**Arkansas Theft of Trade Secrets Act - Ark. Code Ann. §§ 4-75-601 *et seq.***

49.     Plaintiff realleges and incorporates herein by reference all allegations set forth in all of the Paragraphs above.

50.     The Confidential Information as defined in the Confidentiality Agreement constitute "trade secrets" within the meaning of the Arkansas Theft of Trade Secrets Act, codified at Ark. Code Ann. §§ 4-75-601 *et seq.* ("**Arkansas Trade Secrets Act**"). Plaintiff is entitled to and requests a declaratory judgment that the Confidential Information constitutes "trade secrets" within the meaning of the Arkansas Trade Secrets Act.

51.     Pursuant to Ark. Code Ann. § 4-75-604, Plaintiff is entitled to and requests preliminary and permanent injunctive relief against Defendant to prohibit Defendant's actual, threatened, and/or inevitable misappropriation of the Confidential Information. This injunctive relief should include, without limitation, an Order prohibiting Defendant from (i) using and disclosing any Confidential Information in any manner; and (ii) being employed by KRUPS to service, handle, or otherwise assist with KRUPS's Walmart account with respect to KRUPS's coffee and other hot beverage brewing appliances for one (1) full year after the injunctive relief is granted. Further, this injunctive relief should include an Order requiring Defendant to return to Keurig any and all Confidential Information and all other trade secrets.

52.     Pursuant to Ark. Code Ann. § 4-75-606, to the extent that Defendant has misappropriated the Confidential Information, Plaintiff is entitled to and requests an award of damages in its favor against Defendant for damages for the actual loss caused by the misappropriation of the Confidential Information and damages for all unjust enrichment caused by the misappropriation of the Confidential Information that is not addressed in computing damages for actual loss, which amounts, exclusive of interests and costs, exceed $75,000.00.

53.     Pursuant to Ark. Code Ann. § 4-75-607 and other applicable law, Plaintiff is entitled to and requests an award of attorney's fees and costs incurred in the prosecution of this action.

## Reservation of Rights

54.     Plaintiff reserves its right to plead further after additional investigation and discovery.

## Demand for Jury Trial

55.     Keurig respectfully demands a trial by jury as to all claims that may be tried to a jury.

**WHEREFORE**, Keurig Green Mountain, Inc. prays for preliminary and permanent injunctive relief as requested herein; for judgment against Christopher Lanning in an amount that exceeds the amount necessary for federal diversity jurisdiction as requested herein; for the declaratory judgments as requested herein; for an award of attorney fees and costs as requested herein; and for all other just and proper relief.   Keurig Green Mountain, Inc. respectfully demands a trial by jury as to all claims that may be tried to a jury.

Date: August 11, 2017                    Respectfully submitted,

**HOPKINS HEADLEE CASTSTEEL PLLC**
Attorneys at Law
1000 West Second Street
Little Rock, Arkansas 72201
www.hopkinslawfirm.com
Telephone: (501) 375-1517
Facsimile:  (501) 375-0231
Email: rcaststeel@hopkinslawfirm.com


By:___/s/ Ryan J. Caststeel_____
       **Gregory M. Hopkins**
       Arkansas Bar No. 81093

       **Ryan J. Caststeel**
       Arkansas Bar No. 2007212

       *Attorneys for Keurig Green Mountain, Inc.*